**FERRELLGAS, L.P. by and through its
General Partner, Ferrellgas, Inc.,**

   **Plaintiff,**

v.                  No. CIV 03-1323 BB/LFG

**RAYMOND ZAMORA,**

   **Defendant.**

## MEMORANDUM OPINION
### AND
## ORDER DENYING PRELIMINARY INJUNCTION

  **THIS MATTER** is before the Court on the motion of Plaintiff Ferrellgas, L.P., for a preliminary injunction [#21]. The Court having read all the submissions of counsel and held a full evidentiary hearing on April 20, 2004, finds the motion fails to reach the threshold required for an injunction and it will be Denied.

*Facts*

  In 1998, Ferrellgas purchased Raymond Zamora's employer, Martinez Gas. Mr. Zamora was required to reapply for employment with Ferrellgas. The employment agreement Mr. Zamora executed creates an "at-will" employment directly binding on the employee and consists of four parts: (I) Employee Acknowledges; (II) (a)

Consideration; (b) Employee Will; (III) Employee Will Not, and (IV) General Provisions. It is specified in paragraph 6 of the "Employee Will Not" section that:

> 6. While employed by Ferrellgas and for a period of two years immediately following termination of Employee's employment in the county or counties where Employee had contact with Ferrellgas customers on behalf of Ferrellgas:
>
>     a) directly or indirectly, in person or through others, for the benefit of Employee or another, call upon, solicit, sell, divert, take away, deliver to, accept business or orders, or otherwise deal with Ferrellgas' Customers, nor shall Employee, in any capacity, assist others to do so; or
>
>     b) directly or indirectly, interfere with the business relationship between Ferrellgas and any Ferrellgas Customers.

After working for Ferrellgas a short time, Mr. Zamora became the General Manager for their Santa Rosa - Guadalupe County office and held that position until September 14, 2003, when he was terminated. The cause and merits of the termination are strongly disputed, but it is clear Mr. Zamora was not keeping his accounts receivable at a level satisfactory to Terry Warnell, the new Area Manager of Ferrellgas.

Within a few weeks after he was terminated, Defendant went to work with a competitor of Ferrellgas, Conway Oil. At that time, Conway Oil was the fourth largest area propane provider, servicing only about 5% of the Santa Rosa market. Since hiring Mr. Zamora, Conway has become the second largest propane provider, having a market share of about 25%, including approximately 200 Ferrellgas customers who have switched to Conway.

### *Preliminary Injunction Standard*

A preliminary injunction is appropriate if the moving party shows: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest. *See Sprint Spectrum v. State Corp. Comm'n*, 149 F.3d 1058, 1060 (10th Cir. 1998); *Longstreth v. Maynard*, 961 F.2d 895, 902 (10th Cir. 1992).

### *Discussion*

The "Employee Agreement" executed by Defendant provides it is to be "governed by the internal laws, and not the conflicts of law provisions, of the State of Missouri." Part IV ¶ 17. Both parties therefore agree Missouri law governs this action. Missouri law appears well settled and clear when applied to the present facts.

Covenants limiting employees from competing with their former employer may be enforced in certain circumstances, but clearly are not favored. *West Group Broadcasting, Ltd. v. Bell*, 942 S.W.2d 934 (Mo. App. 1997). This is because such non-compete clauses limit competition. *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71 (Mo. 1985). The Missouri courts have therefore carefully examined the circumstances surrounding the execution of such contracts and will not allow an employer to "extract a restrictive covenant from an employee merely to protect himself from competition...."

*Steamatic of Kansas City, Inc. v. Rhea*, 763 S.W.2d 190, 192 (Mo. App. 1988). These no-compete covenants are enforceable, then, "only if a legitimate protectable interest of the employee is served." *West Group*, 942 S.W.2d at 937. These covenants tend to be enforced only when the employee voluntarily leaves and seeks to use the employer's trade secrets or customer lists. *See, e.g., Kessler-Heasely Artificial Limb Co. v. Kenney*, 90 S.W.3d 181 (Mo. App. 2001); *Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613 (Mo. App. 1988).

Since these agreements are usually enforced by injunctive relief in equity, the courts must weigh the relative fault and hardship to the parties. Such a balancing has no doubt contributed to the Missouri precedent which strongly augers against injunctive relief on the instant facts. In *Property Tax Representatives, Inc. v. Chatam*, 891 S.W.2d 153, 156 (Mo. App. 1995), the Missouri Court of Appeals succinctly stated, "if the employer discharges an employee without cause, a court of equity may, in its exercise of its discretion, refuse to aid the employer in enforcing the employee's non-compete agreement by injunction." Indeed, "[b]ased on recent Missouri cases, it has become the general rule that if the employer discharged an employee without cause, a court of equity will refuse to order injunctive relief to enforce the employee's non-compete." William M. Corrigan, Jr., *Non-Compete Agreements – an Overview*, 54 J. Mo. B. 140, 141 (1998); *See also Superior Gearbox Co. v. Edwards*, 869 S.W. 2d 239, 244 (Mo. App. 1993); *Showe-Time Video Rentals, Inc. v. Douglas*, 727 S.W.2d 426, 431 (Mo. App. 1987).

4

Counsel for Mr. Zamora relies on the logical corollary of this rule that an employer cannot seek to enforce the covenant not to compete if it was the employer who materially breached the contract initially. *Shelbina Veterinary Clinic v. Holthaus*, 892 S.W.2d 803, 805 (Mo. App. 1995); *Luketich v. Goedecke, Wood & Co.*, 835 S.W.2d 504 (Mo. App. 1992); *Smith-Scharff Paper Co. v. Blum*, 813 S.W.2d 27 (Mo. App. 1991). This is based on the principle that "[a] court of equity will not aid a party who resorts to unjust and unfair conduct." *McKnight v. Midwest Eye Inst.*, 799 S.W.2d 909, 917 (Mo. App. 1990).

Here, Ferrellgas provided testimony that despite repeated warnings, Mr. Zamora refused to terminate overdue customers. Mr. Zamora testified that Ferrellgas had inconsistent and impossible accounts receivable targets. Mr. Zamora further testified that he had already earned an annual bonus of over $4,000, but Ferrellgas never paid it. There was in fact evidence the Ferrellgas accounting office cut such a check, but Mr. Warnell intercepted it before delivery to Mr. Zamora. The timing and materiality of a breach are usually questions of fact, *Shelbina*, 892 S.W.2d at 805, and at this point there is a serious conflict in the evidence; a conflict which might be better resolved by a jury. This evidentiary dispute makes it impossible for this Court to find that Plaintiff has a substantial likelihood of prevailing on the merits.

As to irreparable injury, Plaintiff raises a legitimate specter of being forced to close its Guadalupe County office if customers continue to desert Ferrellgas at the same

rate as they have in the past. This scenario seems unlikely as most clients who would be likely to follow Mr. Zamora would already have done so. Defendant further argues the closing of the Guadalupe County office is not irreparable injury for a company the size of Ferrellgas. *Cf. Ferrellgas, Inc. v. Dean*, 887 F.2d 1086 (6th Cir. 1989) (unpublished) (upholding denial of injunction in similar context in part on lack of irreparable injury).

The Court also believers the equities of the public interest are slightly in favor of Plaintiff. In spite of the extensive testimony as to the exemplary service provided by Mr. Zamora, the limited injunction requested would still allow him to service any customer in the County except the approximately 700 still enrolled by Ferrellgas. On the other side, if Ferrellgas does leave the community, it will certainly result in less competition and thus potentially higher prices. This factor does not, however, tip the scales enough to provide a substantial likelihood Plaintiff will prevail on the merits.

## O R D E R

For the above stated reasons, Plaintiff's *Motion for Preliminary Injunctive Relief* is DENIED.

SO ORDERED this 30th day of April, 2004.

                                                                                              _____
                                                                                              **BRUCE D. BLACK**
                                                                                              **United States District Judge**

**For Plaintiff:**
    Matthew A. Pullen, Yenson Lynn Allen & Wosick, Albuquerque, NM
    Mark C. Tatum, Shook Hardy & Bacon, Kansas City, MO

**For Defendant:**
    Herbert M. Silverberg, Albuquerque, NM